E-FILED
Monday, 23 January, 2023  10:20:22 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT A

## (Part 1 of 5)

**IN THE CIRCUIT COURT**
**FOR THE FIFTH JUDICIAL CIRCUIT OF ILLINOIS**
**VERMILION COUNTY, DANVILLE, ILLINOIS**

| | | |
|---|---|---|
| FULL-FILL INDUSTRIES, L.L.C., | ) | |
| an Illinois Limited Liability Company, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CASE NO. _____ |
| | ) | |
| B&G FOODS NORTH AMERICA, INC., | ) | |
| a Delaware Corporation, | ) | JURY DEMANDED |
| | ) | |
| Defendant. | ) | |

---

**COMPLAINT**

The Plaintiff Full-Fill Industries, L.L.C. ("Plaintiff"), an Illinois Limited Liability

Company, claims and alleges against the Defendant B&G Foods North America, Inc.

("Defendant"), a Delaware Corporation, as follows:

**NATURE OF THIS ACTION**

1.  This lawsuit arises from the Defendant's beach of its contractual obligation to pay

    $903,585.24 for the services provided by the Plaintiff to package the Defendant's cooking

    oils, and the Defendant's bad faith conduct and fraudulent scheme in repeatedly taking

    possession of cooking oils packaged by the Plaintiff while falsely misrepresenting to the

    Plaintiff that the Defendant intended to pay the Plaintiff for its packaging services, for the

    purpose of securing for the Defendant an illicit economic benefit at the Plaintiff's expense

    while the Defendant secretly made arrangements to use a different packager.

## PARTIES

2.   The Plaintiff Full-Fill Industries, L.L.C. is an Illinois Limited Liability Company.  The Plaintiff is a family-owned small business with its only place of business at 400 N. Main Street in the Village of Henning, in Vermilion County Illinois.

3.   The Plaintiff provides services to package into aerosol cans spray cooking oils of its customers.

4.   The Defendant B&G Foods North American, Inc. is a Delaware Corporation with its headquarters in Parsippany, New Jersey and is a self-proclaimed "global" company.

5.   The Defendant sells Crisco brand spray cooking oils to its retail and wholesale customers, and the Defendant formerly contracted for the Plaintiff to package the Defendant's oils.

## JURISDICTION AND VENUE

6.   This Court has subject matter jurisdiction over the claims asserted in this Complaint because the Circuit Court of Vermilion County, Illinois is a Court of general subject matter jurisdiction.

7.   Venue is proper in Vermilion County pursuant to Section 2-101(2) of the Code of Civil Procedure, 735 ILCS §5/2-101(2), because Vermilion County is a county "in which the transaction or some part thereof occurred out of which the cause of action arose."

8.   Specifically, in Vermilion County, Illinois, the Plaintiff signed the contract with the Defendant, the Defendant placed orders for the Plaintiff's packing services, and the Defendant required the Plaintiff to perform the Plaintiff's packing services.

9.   Personal jurisdiction over the Defendant exists in the State of Illinois in compliance with due process under the United States and Illinois Constitutions and Illinois' long-arm statute, 735 ILCS §5/2-209, because the Defendant engaged in continuous and substantial business

activity in Illinois by marketing and selling its food products in Illinois to its customers, and the Defendant purposely directed its activities at Illinois that give rise to and relate to this cause of action, including, but not limited to, that the Defendant sent orders for the Plaintiff's packing services to the Plaintiff in Illinois, contracted with the Illinois Plaintiff, required by the terms of the contracts for the Plaintiff to perform its packing services only in Illinois, directed communications to the Plaintiff in Illinois, and caused harm to the Plaintiff in Illinois.

### FACTS

10. On about May 9, 2008, American Aero Foods, LLC and J.M. Smucker Company ("Smucker") entered into an agreement entitled the Contract Packing Master Agreement between the J.M. Smucker Company and American Aero Foods, LLC. This Agreement is attached hereto in relevant part as Exhibit 1. Subsequently, the parties executed renewals of the Agreement and a First Amendment to implement a packaging change, which are not relevant to this Complaint.

11. On about July 1, 2017, a Second Amendment to Contract Packing Master Agreement was executed whereby the Plaintiff became a party to the Contract Packing Master Agreement with Smucker in place of American Aero Foods, LLC and the term of the Agreement was extended to April 30, 2022. The Second Amendment is attached hereto as Exhibit 2.

12. A pricing matrix specifying the prices for the Plaintiff's packing services was included as an exhibit to the Agreement and was periodically updated. The pricing matrix in effect in 2021 and 2022 at the time that the Plaintiff provided the packing services that are the subject of this Complaint is attached hereto as Exhibit 3. The Contract Packing Master

Agreement and its amendments shall be collectively referred to hereinafter as the "Master Agreement".

13.  The Master Agreement provided, among other things, for the Plaintiff to provide services to package Smucker's Crisco brand cooking oils into aerosol cans and for the Defendant to pay for the Plaintiff's packaging services within 45 days from the shipment day of the packaged oils.  (Agreement ¶4, Ex. 1; Second Amendment ¶1(g), Ex. 2.)

14.  On about December 1, 2020, the Defendant acquired from Smucker its Crisco brand, and Smucker assigned the Master Agreement to the Defendant with the Plaintiff's consent.

15.  The Master Agreement states in part:

> From time to time during the Term, [the Defendant] will place Purchase Orders with [the Plaintiff].  The Products which the [Plaintiff] will pack for [the Defendant], and which are covered by the terms of this Agreement, will be specified in the Purchase Orders.  All terms regarding quantity, price, Product types and pack styles, and other necessary terms not set forth in this Agreement will be contained in Purchase Orders as mutually agreed upon by the parties.  Purchase Orders will be and are hereby incorporated into this Agreement by reference and the terms of this Agreement will be controlling in the event of any inconsistency between terms of a Purchase Order and the terms of this Agreement.

(Agreement ¶4, Ex. 1.)

16.  From November 29, 2021 to January 17, 2022, the Plaintiff made packaged Crisco cooking oils available to the Defendant to pick up at the Plaintiff's packaging facility in response to the Defendant's requests, and the Defendant picked up and accepted the packaged cooking oils.

17.  However, the Defendant has not paid the $903,585.24 due to the Plaintiff for its services to package the cooking oils.

18. When the Defendant took possession of the Crisco cooking oils packaged by the Plaintiff, the Defendant had no intention to pay the Plaintiff for its packaging services.

19. By the Defendant's actions and statements, the Defendant intentionally misled the Plaintiff to falsely believe that the Defendant would pay for the Plaintiff's packaging services.

20. Such actions and statements included, but were not limited to, apologizing to the Plaintiff for past delays in payment and assuring the Plaintiff that payment problems would not continue; providing administrative reasons for delays in payment instead of the true reason that payments were not timely made; setting the Plaintiff up in the Defendant's accounts payable system to purportedly receive ACH payments; and failing to respond to the Plaintiff's inquiries as to what the true issue was that caused payments to cease.

21. Some examples of the Defendant's many statements falsely representing that the Defendant would pay for the packaging services provided by the Plaintiff include the following:

    a. On December 3, 2021, Ms. Eve Owens, in the Defendant's Accounts Payable department for the Defendant's Cincinnati Plant, stated in an e-mail to Ms. Laurie Delhaye, an employee in the Plaintiff's accounting department, and to Mr. Chad Steinbaugh, the Plaintiff's General Manager: "On behalf of B&G Foods I would like to apologize for the delay in payments and thank you for your continued patience during our period of transition. . . Please know that I am continuing to work quickly to get up to speed and hopefully going forward things will continue to smooth out."

    b. On December 8, 2021, Mr. Lenny Jones, plant controller for the Defendant in Cincinnati, Ohio, sent an e-mail to Ms. Delhaye requesting an account statement and assured her that "[w]ith yr end coming up, I want to make sure that any older invoicing issues are resolved."

c. On December 16, 2021, Mr. Jones responded to Ms. Delhaye's requests for assurances that the Defendant would timely make future payments by stating in an e-mail to her that: "I am working with the AP team to get you set up with ACH payments to avoid payment issues like this in the future.  With these 2 checks posted to the account, please forward me the latest report of outstanding invoices so I can coordinate the processing of them."

d. On about December 16, 2021, an individual from the Defendant's treasury department confirmed to Ms. Delhaye that ACH payment processing was being set up for the Defendant to make payments to the Plaintiff for its packaging services and the individual verified the Plaintiff's ACH banking information with Ms. Delhaye.

22. The Defendant misled the Plaintiff to falsely believe that the Defendant would pay for the Plaintiff's packaging services in order to coerce the Plaintiff to continue to provide packaging services to the Defendant to enable the Defendant to receive as much financial benefit at the Plaintiff's expense as the Defendant could possibly obtain.

23. All the while, the Defendant was securing for itself an alternative service provider to package its cooking oils, but the Defendant did not formally terminate its Master Agreement with the Plaintiff or otherwise inform the Plaintiff that the Defendant had no intention of continuing to do business with the Plaintiff.

24. As a result, the Plaintiff was unable to reconfigure its packaging machinery and to otherwise make arrangements to package products of other customers, and the Plaintiff continued to incur sizable costs to enable it to continue to supply the Defendant with packaging services.

**COUNT I**
**BREACH OF CONTRACT**
**(FAILURE TO PAY FOR PACKAGING SERVICES OFFERED**
**FROM NOVEMBER 29, 2021 TO DECEMBER 2, 2021)**

25. The Plaintiff realleges and incorporates in their entirety herein the allegations pleaded in Paragraphs 1 to 24 above.

26. Beginning from November 29, 2021 to December 2, 2021 and continuing thereafter, the Plaintiff made packaged Crisco cooking oils available to the Defendant for pick-up at the Plaintiff's packaging facility, and the Plaintiff notified the Defendant in writing of the quantities of the cooking oils available and the price for the Plaintiff's packaging services.

27. The Defendant accepted the Plaintiff's packing services by taking possession of the packaged cooking oils.

28. The Plaintiff issued to the Defendant the invoices attached hereto as Exhibit 4 totaling $162,689.75, which was the agreed-upon price for the Plaintiff's packaging services.

29. As such, a valid and enforceable contract was formed that required the Defendant to pay the invoiced amounts for the Plaintiff's packaging services within 45 days from the shipment dates.

30. The Plaintiff fully performed all of its obligations that were conditions to the Defendant's obligation to pay the Plaintiff for its packaging services.

31. The Defendant has breached its contractual obligation to pay for the Plaintiff's packaging services by not paying the Plaintiff within 45 days from the shipment dates.

32. The Plaintiff has suffered damages as a result of the Defendant's nonpayment.

33. The Defendant's nonpayment for the Plaintiff's packaging services was in bad faith and was for a dishonest purpose, exhibited moral obliquity, and a conscious wrongdoing.

7

WHEREFORE the Plaintiff Full-Fill Industries, L.L.C. prays this Court to enter a judgment in its favor and against the Defendant B&G Foods North America, Inc. awarding the Plaintiff the following relief:

a. Compensatory damages in the amount of $162,689.75 that the Defendant failed to pay for the Plaintiff's packaging services;

b. Pre-judgment interest pursuant to applicable law;

c. Post-judgment interest pursuant to applicable law;

d. Costs and an award of attorneys' fees under the common law of the State of Ohio applicable pursuant to Section 26 of the Master Agreement; and

e. All such other and further relief as the Court deems just and proper.

**COUNT II**
**BREACH OF CONTRACT**
**(FAILURE TO PAY FOR PACKAGING SERVICES OFFERED**
**FROM DECEMBER 9, 2021 TO JANUARY 11, 2022)**

34. The Plaintiff realleges and incorporates in their entirety herein the allegations pleaded in Paragraphs 1 to 24 above.

35. On December 6 and 7, 2021, the Defendant sent to the Plaintiff the Purchase Orders that are attached hereto as Exhibit 5.

36. In response to the Purchase Orders, the Plaintiff made packaged Crisco cooking oils available to the Defendant for pick-up at the Plaintiff's packaging facility beginning from December 9, 2021 to January 11, 2022 and continuing thereafter, and the Plaintiff notified the Defendant in writing of the quantities of the cooking oils available and the price for the Plaintiff's packaging services.

37.  The Defendant accepted the Plaintiff's packing services by taking possession of the packaged cooking oils.

38.  The Plaintiff issued to the Defendant the invoices attached hereto as Exhibit 5 totaling $225,557.62 for the Plaintiff's packaging services, which was the agreed-upon price for the Plaintiff's packaging services.

39.  As such, a valid and enforceable contract was formed that required the Defendant to pay the invoiced amounts for the Plaintiff's packaging services within 45 days from the shipment dates.

40.  The Plaintiff fully performed all of its obligations that were conditions to the Defendant's obligation to pay the Plaintiff for its packaging services.

41.  The Defendant has breached its contractual obligation to pay for the Plaintiff's packaging services by not paying the Plaintiff within 45 days from the shipment dates.

42.  The Plaintiff has suffered damages as a result of the Defendant's nonpayment.

43.  The Defendant's nonpayment for the Plaintiff's packaging services was in bad faith and was for a dishonest purpose, exhibited moral obliquity, and a conscious wrongdoing.

WHEREFORE the Plaintiff Full-Fill Industries, L.L.C. prays this Court to enter a judgment in its favor and against the Defendant B&G Foods North America, Inc. awarding the Plaintiff the following relief:

a.  Compensatory damages in the amount of $225,557.62 that the Defendant failed to pay for the Plaintiff's packaging services;

b.  Pre-judgment interest pursuant to applicable law;

c.  Post-judgment interest pursuant to applicable law;

d.  Costs and an award of attorneys' fees under the common law of the State of Ohio

applicable pursuant to Section 26 of the Master Agreement; and

e.  All such other and further relief as the Court deems just and proper.

**COUNT III**
**BREACH OF CONTRACT**
**(FAILURE TO PAY FOR PACKAGING SERVICES**
**OFFERED FROM DECEMBER 28, 2021 TO JANUARY 17, 2022)**

44.  The Plaintiff realleges and incorporates in their entirety herein the allegations pleaded in

Paragraphs 1 to 24 above.

45.  Beginning from December 28, 2021 to January 17, 2022 and continuing thereafter, the

Plaintiff made packaged Crisco cooking oils available to the Defendant for pick-up at the

Plaintiff's packaging facility, and the Plaintiff notified the Defendant in writing of the

quantities of the cooking oils available and the price for the Plaintiff's packaging services.

46.  The Defendant accepted the Plaintiff's packing services by taking possession of the

packaged cooking oils.

47.  The Plaintiff issued to the Defendant the invoices attached hereto as Exhibit 6 totaling

$515,337.87. which was the agreed-upon price for the Plaintiff's packaging services.

48.  As such, a valid and enforceable contract was formed that required the Defendant to pay for

the Plaintiff's packaging services within 45 days from the shipment dates.

49.  The Plaintiff fully performed all of its obligations that were conditions to the Defendant's

obligation to pay the Plaintiff for its packaging services.

50.  The Defendant has breached its contractual obligation to pay for the Plaintiff's packaging

services by not paying the Plaintiff within 45 days from the shipment dates.

51.  The Plaintiff has suffered damages as a result of the Defendant's nonpayment.

10

52. The Defendant's nonpayment for the Plaintiff's packaging services was in bad faith and was for a dishonest purpose, exhibited moral obliquity, and a conscious wrongdoing.

WHEREFORE the Plaintiff Full-Fill Industries, L.L.C. prays this Court to enter a judgment in its favor and against the Defendant B&G Foods North America, Inc. awarding the Plaintiff the following relief:

   a. Compensatory damages in the amount of $515,337.87 that the Defendant failed to pay for the Plaintiff's packaging services;

   b. Pre-judgment interest pursuant to applicable law;

   c. Post-judgment interest pursuant to applicable law;

   d. Costs and an award of attorneys' fees under the common law of the State of Ohio applicable pursuant to Section 26 of the Master Agreement; and

   e. All such other and further relief as the Court deems just and proper.

## COUNT IV
## PROMISSORY FRAUD

53. The Plaintiff realleges and incorporates in their entirety herein the allegations pleaded in Paragraphs 1 to 24 above.

54. The Defendant engaged in a scheme and an object to defraud by repeatedly taking possession of cooking oils packaged by the Plaintiff without any intention to pay the Plaintiff and while making statements to the Plaintiff misrepresenting that the Defendant intended to pay.

55. The Defendant's statements were made with the intent to induce the Plaintiff to continue to package the Defendant's cooking oils in reliance on the truth of the Defendant's statements in order to extract an illicit financial benefit from the Plaintiff, while the Defendant secretly

11

made arrangements with an alternative packager and precluded the Plaintiff from making arrangements to package cooking oils for other customers.

56. The Plaintiff was injured from its reliance on the Defendant's false statements because, among other things, the Plaintiff continued to provide the Defendant with packaging services for which the Plaintiff was not paid, incurred costs to continue to package the Defendant's cooking oils, and was precluded from making arrangements to package cooking oils for other customers.

WHEREFORE the Plaintiff Full-Fill Industries, L.L.C. prays this Court to enter a judgment in its favor and against the Defendant B&G Foods North America, Inc. awarding the Plaintiff the following relief:

a. Compensatory damages for the packaging services that the Plaintiff provided the Defendant in the amount of $903,585.24, for the costs that the Plaintiff incurred to continue to package the Defendant's cooking oils, and the profits that the Plaintiff lost from not packaging cooking oils for other customers;

b. Post-judgment interest pursuant to applicable state law;

c. Punitive damages, including, but not limited to, an award of attorneys' fees;

d. Costs; and

e. All such other and further relief as the Court deems just and proper.

Dated: December 8, 2022

Mr. David Clapp, Manager
Plaintiff Full-Fill Industries, L.L.C.

Ms. Debra Tucker, attorney for the Plaintiff
THE TUCKER FIRM, LLC
540 North LaSalle Street
Chicago, Illinois 60654
Phone (312) 202-0222
dtucker@thetuckerfirm.com

13

## **JURY DEMAND**

The Plaintiff Full-Fill Industries, L.L.C. hereby requests a jury on the trial of its claims filed in its Complaint filed in the above-captioned lawsuit.

Mr. David Clapp, Manager
Plaintiff Full-Fill Industries, L.L.C.

14