E-FILED
Monday, 23 January, 2023  10:20:23 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT A
## (Part 3 of 5)

10.3   After receipt of Products, Smucker reserves the right to reject any Products which do not meet all requirements hereunder. The Supplier agrees to reimburse or credit Smucker for all supplies and raw material which Smucker supplied, if any, and other associated costs of Products properly rejected for which Smucker has already paid the Supplier. Credit for supplies and raw materials supplied by Smucker will be at Smucker's replacement cost.

10.4   Terms are net 30 days from shipment day.

11.   Raw Material: Finished Good Storage.

11.1   The Supplier will store ingredients and packaging materials to be used for the production of the Products under the conditions specified in Smucker's product specifications as set forth in the SLEA.

11.2   Supplier will store finished Products at a Smucker-approved location on the Supplier's premises, at the Supplier's expense, following production of the Products.

12.   Equipment. From time to time Smucker may provide the Supplier with equipment necessary for the Supplier to produce the Products. All such equipment in which the Supplier does not obtain title shall be conspicuously identified as the property of Smucker or as Smucker's equipment, as applicable. The Supplier warrants that it will not itself, nor allow others to, encumber, place any lien upon, or obtain any security interest in such equipment. All such equipment now at the Supplier's location is listed on Exhibit C hereto and will be listed on Exhibit C as it is amended from time to time.

13.   Confidentiality. Smucker and Supplier executed a Mutual Confidentiality-Development Agreement dated __May 9th__, 2008 ("Confidentiality Agreement"). The Confidentiality Agreement is hereby incorporated into this Agreement and its terms will govern the confidentiality obligations of both parties.

14.   Warranties: Indemnification.

14.1.   The Supplier warrants that all Products manufactured and packaged under this Agreement will comply in all respects with the specifications and requirements set forth in Smucker's Product specifications, as such specifications and requirements may be revised from time to time by Smucker, will comply in all respects with the Federal Food, Drug and Cosmetics Act and all other applicable federal, state, and municipal laws and regulations, and will not be adulterated or misbranded.

8

14.2    The Supplier agrees to indemnify Smucker and save it harmless from all claims, costs, expenses, and damages, including attorneys' fees, arising out of or relating to any breach by the Supplier of any express or implied warranties under this Agreement or the failure by the Supplier to fulfill its obligations hereunder, or any injury to any person or persons or damage to any property attributable to such breach or failure, or to the negligence of the Supplier, its officers, directors, employees, or representatives.

14.3    Smucker agrees to indemnify the Supplier and save it harmless from all claims, costs, expenses, and damages, including attorney's fees, which arise out of or in connection with the delivery, sale, or use of the Products after their delivery to Smucker or such other delivery location as Smucker shall designate, except to the extent that any such claims, costs, expenses, or damages arise out of or are related to a failure of the Supplier to manufacture, package, or test such Products in accordance with the requirements and specifications therefor or to any failure on the Supplier's part otherwise to comply with the terms of this Agreement, or to the negligence of the Supplier, its officers, directors, employees, or representatives.

15.    Default and Termination.

15.1    Smucker will have the right without further notice to terminate this Agreement upon the occurrence of any of the following:

a)    A breach by the Supplier of any of the warranties in Section 14.1; or

b)    A default by the Supplier in the performance of any other obligation hereunder and the failure to cure any such default within 30 days after receiving notice thereof from Smucker;

15.2    Upon termination of this Agreement for any reason, the Supplier shall make available to Smucker, for return or disposal, all of the following:

a)    Unused Product labels;

b)    Raw materials or equipment furnished by Smucker and in the Supplier's possession;

c)    Raw materials purchased by the Supplier for use in producing the Products which reasonably would have been used within the next sixty (60) days, based upon production schedules for the Products; and

9

d)    All finished Products not delivered to or ordered out by Smucker prior to termination.

The Supplier will give a Smucker representative access to its facilities to examine the raw materials and finished Products. If they do not meet specifications, the Supplier will dispose of the raw materials or finished Products according to Smucker's directions. All labels and equipment will be returned to Smucker or shipped to a third party according to Smucker's directions.

15.3    Smucker will reimburse the Supplier on termination for the purchase price paid by the Supplier, if any, for all materials purchased by Supplier for the Products, which are returned to Smucker pursuant to <u>Section 15.2</u>. Smucker also will pay the contract packing fee for finished Product meeting specifications. Shipping costs for items returned or shipped to a third party at Smucker's direction will be the responsibility of Smucker.

16.    <u>Insurance</u>.

16.1    The Supplier will maintain product liability insurance covering the Products manufactured and packaged hereunder, including vendor's liability coverage, in amounts of not less than One Million Dollars ($1,000,000) aggregate, with an insurance carrier of good repute and sound financial condition. Such policy will include Smucker as an additional insured for purposes of this Agreement and will require that Smucker be given at least thirty (30) days' written notice prior to cancellation. The Supplier will furnish Smucker with a certificate evidencing such insurance within ten (10) days after execution of this Agreement.

16.2    The Supplier also will obtain and continue in force during the term of this Agreement workers' compensation insurance with limits in accordance with applicable state and federal laws covering the Supplier's employees. The Supplier will provide Smucker with a certificate showing evidence of this insurance within ten (10) days after execution of this Agreement.

17.    <u>Notices</u>. Any notice required hereunder will be given by hand delivery, by a recognized overnight courier, by facsimile (with a hard copy thereof to follow by regular mail), or by sending the same by certified or registered mail, addressed:

if to Smucker, to:                      The J. M. Smucker Company
                                        5204 Spring Grove Avenue
                                        Cincinnati, Ohio 45217
                                        Attn: Peter Fluegeman

10

with a copy to:

The J. M. Smucker Company
Strawberry Lane
Orrville, Ohio 44667
Attn: Legal Department

If to the Supplier, to:

American Aero Foods, LLC
400 N. Main Street
Henning, Illinois 61848
Attn: David L Clapp

With a copy to:

Acton & Snyder
11 E. North Street
Danville, Illinois 61832
Attn: Pat Wolgamot

or to such other address as either party may advise pursuant to a notice given as herein provided. Notices delivered by hand or by facsimile will be deemed received upon actual receipt.

18. <u>Intellectual Property</u>. Smucker represents and warrants that it is the owner or licensee of the trademarks, patents, assets, and goodwill relating to the Products.

19. <u>Assignment</u>. This Agreement is binding upon and inures to the benefit of the parties hereto and their respective successors and assigns, but may not be assigned by either party without the prior written consent of the other. Any change in the control of either party will be deemed an assignment hereunder.

20. *Force Majeure*. Failure of either party to perform any of its obligations under this Agreement as a result of reasons beyond its reasonable control, including, but not limited to, strikes, labor disputes, fire, Acts of God, and acts or orders of any government, will not constitute a default under or breach of this Agreement; *provided, however,* that if such an event will prevent the Supplier from performing hereunder during a period of sixty (60) consecutive days during which all or part of a Production Run is scheduled, Smucker, at its option, may terminate this Agreement.

21. <u>Failure or Delay</u>. No failure or delay by either party in exercising any right arising out of breach of any provision of this Agreement will de deemed a waiver of such right. No waiver of a right in one instance will be deemed to waive any rights with regard to similar circumstances in the future. No notice or demand, in a case where it is not required by this Agreement, will entitle the recipient to any similar notice or demand in subsequent similar circumstances.

22. <u>Approval or Consent</u>. Wherever the terms of this Agreement require the approval or consent of Smucker or the Supplier, such approval or consent will not be unreasonably withheld.

11

23.  Records. The Supplier agrees to maintain complete records on Products produced under this Agreement in a form satisfactory to Smucker. The Supplier further agrees to keep all records pertaining to this Agreement for a period of three (3) years from the date of production of the Products with regard to which such records relate, or for such lesser or greater period of time as may be agreed upon in writing by Smucker.

24.  Entire Agreement. This Agreement sets forth the entire agreement and understanding between Smucker and the Supplier, supersedes all prior agreements and understandings between them with respect to the subject matter of this Agreement, and is binding upon their respective successors and permitted assigns.

25.  Modification. No amendments, modifications, waivers, or supplements to this Agreement will be enforceable against or binding upon Smucker and the Supplier unless evidenced by a written instrument expressly referring to this Agreement and executed by the duly authorized representatives of both of them.

26.  Governing Law. The formation, validity, construction and performance of this Agreement will be governed by and construed in accordance with the laws of the State of Ohio without regard to provisions of conflicts of law.

THE J. M. SMUCKER COMPANY        AMERICAN AERO FOODS, LLC

By: _____        By: _____

Name                              Name
In Print: Steven Oakland          In Print: DAVID L. CLAPP

Title: VP & General Manager,      Title: CEO
       Consumer Oils & Baking

12

**EXHIBIT 2**



### SECOND AMENDMENT TO CONTRACT PACKING MASTER AGREEMENT

This Second Amendment to Contract Packing Master Agreement (this "**Second Amendment**") is entered into as of the 1st day of July, 2017 among The J. M. Smucker Company, with a place of business at 1 Strawberry Lane, Orrville, Ohio 44667 ("**Smucker**"), and Full-Fill Industries, LLC, (formerly American Aero Foods, LLC) with a place of business at 400 North Main Street, Henning, Illinois 61848 ("**Supplier**").

### RECITALS

Smucker and Supplier entered into a Contract Packing Master Agreement on May 9, 2008 (the "**Agreement**") and then amended the Agreement on October 29, 2009 (the "**First Amendment**"). Smucker and Supplier now desire to modify the Agreement and First Amendment in accordance with the terms of this Second Amendment.

Smucker and Supplier agree to enter into this Second Amendment in the short term, with the intention of implementing a new form of a master contract manufacturing agreement within the first year of this Second Amendment that will ultimately govern the parties' relationship.

### TERMS AND CONDITIONS

1.  <u>AMENDMENT TO AGREEMENT.</u>

    (a) Section 2.1 is deleted its entirety and replaced with the following:

    "Quality Procedure Expectations: Contract Manufacturer" means Smucker's Quality Procedure Expectations: Contract Manufacturer, provided to Supplier by Smucker (as the same may be updated and provided to Supplier from time to time by or on behalf of Smucker), the provisions of which are (and shall be) incorporated into this Agreement by reference."

    (b) Section 2.2 is deleted its entirety and replaced with the following:

    "Initial Period" means the period beginning July 1, 2008 and ending April 30, 2022.

    (c) Section 2.5 is deleted its entirety and replaced with the following:

    "Products" means *Crisco®* and *Pillsbury®* pan spray products sold under Smucker's brands and trademarks.

    (d) Section 3 is deleted in its entirety and replaced with the following:

    "<u>Term</u>. This Agreement will remain in effect during the Initial Term."

    (e) Sections 5.1 and 5.2 is modified to replace the reference of "GMP Manual" with "Quality Procedure Expectations: Contract Manufacturer."

    (f) Section 7.5 is added as follows:

    "For each of the Products, Supplier shall prepare, maintain and provide to Smucker, in Smucker's required format, a safety data sheet ("SDS") in compliance with all federal, state and local laws, rules and regulations, including the Hazard Communication Standard (29 CFR 1910.1200) ("HCR"). Supplier represents and warrants that the information contained in a SDS is (i) accurate and (ii) complete regarding the sections Supplier is required to include under HCR. Supplier shall indemnify, defend and hold Smucker harmless from all third-party claims, costs, expenses, and

    Confidential



damages, including attorneys' fees, arising out of or relating to a SDS, except to the extent caused by Smucker's negligence."

(g) Section 10.4 is deleted in its entirety and replaced with the following:

"Terms are net 45 days from shipment day."

(h) Schedule B is deleted in its entirety and replaced with the attached Schedule B.


2.      REMAINDER OF AGREEMENT UNMODIFIED. All other terms and conditions of the Agreement will remain in full force and effect. Any capitalized terms not defined in this Amendment shall have the meaning defined in the Agreement.


N WITNESS WHEREOF, the parties have executed this Second Amendment with the intent to be legally bound.


**THE J. M. SMUCKER COMPANY**                    **FULL-FILL INDUSTRIES, LLC**


_____                    _____
Signature                                        Signature

_____                    _____
Printed Name                                     Printed Name    DAVID L. CLAPP

_____                    _____
Title                                            Title    CEO/President

                          Confidential